ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
BYUNG UK KIM, a/k/a BILLY KIM,    :
                                  :
            Petitioner,           :
                                  :   REPORT & RECOMMENDATION
    -against-                     :
                                  :   03 Civ. 7584 (SCR)(MDF)
BRION D. TRAVIS, Chairman of      :
the New York State Division of    :
Parole; TIMOTHY STEWART, New      :
York State Parole Officer; and    :
ELIOT SPITZER, Attorney General   :
of the State of New York,         :
                                  :
            Respondent.           :
----------------------------------x

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

   Petitioner has filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 to challenge his convictions by plea of guilty for aiding and abetting, and acting in concert with others on each of the following charges: two (2) counts of kidnapping in the first degree (N.Y. Penal Law § 135.25), two (2) counts of intentional murder in the second degree (N.Y. Penal Law § 125.25(1)), and two (2) counts of felony murder (N.Y. Penal Law § 125.25(3)). Pursuant to a plea agreement, the Westchester County Supreme Court, Justice Herold, sentenced Petitioner to concurrent terms of imprisonment of five and one-half (5½) years to life on the four (4) murder counts, and five (5) to fifteen (15) years on the two (2) kidnapping counts.

1

Copies mailed / handed / faxed to counsel 7/12/07

Through answers to leading questions from the state trial court and the prosecutor, Petitioner, a member of the Green Dragons gang, admitted that on January 1, 1987, he aided several fellow gang members in the abduction and murder of two members of a rival gang, Fok-Ching (Flying Dragons). Pet. Ex. D (transcript of plea).

On November 14, 1988, Petitioner's counsel, who had been retained, filed a timely notice of appeal. Pet. Ex. E. Following the State's motion to dismiss the appeal, Petitioner's attorney submitted an affidavit, pet. ex. I, in which he averred that he had not been retained to pursue the appeal. Before and after filing the notice of appeal he advised Petitioner and his father of their options: hire current counsel or another attorney for the appeal if they had the funds or apply for representation if they did not. He reiterated this advice in a subsequent communication to an individual employed at the place of Petitioner's incarceration. Thereafter, he next heard from Petitioner by telephone in August 1993. Petitioner advised him that he had previously applied for and had been denied assigned counsel and that he had not retained counsel for the appeal. Although Petitioner had survived the initial motion to dismiss, pet. ex. J, when the appeal was not thereafter perfected, the State successfully renewed the motion, and the appeal was

2

dismissed for lack of timely prosecution. People v. Kim, No. 93-05473, slip op. (N.Y. App. Div. Apr. 14, 1994). Pet. Ex. K. On May 30, 2003 Petitioner's current attorney moved by writ of error *coram nobis* to vacate the dismissal of the appeal. The Appellate Division denied this motion. People v. Kim, No. 1993-05473, slip op. (N.Y. App. Div. July 17, 2003) (Pet. Ex. M), lv. denied, 100 N.Y.2d 618, 767 N.Y.S.2d 401 (Sept. 15, 2003).

While he was on parole, Petitioner left the United States in November 2003 to Korea, his country of origin, to avoid an order of deportation which had been stayed while pending appeal. Resp. Ex. 19 (affidavit of parole officer); Resp. Ex. 20 (photocopy of plane ticket and Petitioner's Republic of Korea travel certificate; Resp. Ex. 21 (arrest warrant for parole violation).

Petitioner contends that he was denied his right to a direct appeal and that counsel had an affirmative obligation to pursue it or otherwise assist him in obtaining a new attorney. In response, the State moves to dismiss the Petition on the basis of the fugitive disentitlement doctrine and the statute of limitations in addition to arguing that Petitioner's claim lacks merit.

Petitioner's departure from the state of New York in violation of the law of New York transformed him into a fugitive. In Clark v. Dalsheim, 663 F. Supp. 1095 (S.D.N.Y. 1987) a state

prisoner on parole had filed a §2254 petition to challenge his convictions. While the petition was pending, similar to the instant Petition, he disappeared, allegedly having committed other offenses in a different state while on parole. Then District Judge and now Circuit Judge Walker observed, "While the federal courts possess jurisdiction over actions commenced by fugitives from justice, typically courts will dismiss such actions before reaching the merits of the fugitive's claim." Id. at 1096 (citing Molinaro v. New Jersey, 396 U.S. 365, 365-66, 90 S. Ct. 498, 498-99 (1970) (per curiam)); see Ortiz v. Senkowski, 01 Civ. 2402 (NRB) (S.D.N.Y. Oct. 22, 2001) (2001 Westlaw 1267178 at *2; Torres v. People, 976 F. Supp. 249, 251 (S.D.N.Y. 1997); Wallace v. Smith, 872 F. Supp. 6 (E.D.N.Y. 1995). Dismissal of a fugitive's habeas petition lies within the exercise of the Court's discretion, Clark, 663 F. Supp. at 1097, and as along as Petitioner remains beyond the reach of the New York authorities, adjudication of the claim(s) raised in this proceeding will be of no legal effect or consequence. Accordingly, I respectfully recommend that your Honor exercise discretion to dismiss this petition.

Apart from an exercise of discretion, following the Appellate Division's dismissal of his appeal in 1994, Congress enacted Public Law 104-132 §101 (Antiterrorism and Effective

4

Death Penalty Act of 1996 ("AEDPA")) which added, in the alternative, four (4) statutes of limitation and a tolling provision for state prisoners to 28 U.S.C. §2244:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

To continue the process of direct appellate review after the Appellate Division dismissed Petitioner's appeal, he had either thirty (30) days to seek leave to appeal to the New York Court of Appeals, or ninety (90) days to seek review in the United States

Supreme Court by writ of certiorari. 28 U.S.C. §2101(c) and (d); N.Y. Crim. Proc. Law §460.10 subd. 5(a). Petitioner did not pursue either avenue to further prosecute his appeal; thus, for purposes of §2244(d)(1)(A) his conviction became final on July 14, 1994, one (1) year and ninety (90) days following the dismissal. Because Petitioner had to file an application for writ of error *coram nobis* to exhaust his claim herein of ineffective assistance of appellate counsel, the provision set forth in subsection (D) applies to his claim. Both the time period and the starting date are the same as Petitioner certainly should have been aware of the factual predicate of his claim that appellate counsel had failed to perfect his direct appeal when the Appellate Division notified him that the appeal had been dismissed.[1] Because he was aware of the factual predicate for his claim of ineffective assistance of appellate counsel prior to the effective date of AEDPA, Petitioner had one (1) year from the effective date, or until April 24, 1997, to file a habeas petition in a federal district court under 28 U.S.C.

---

[1] Petitioner submitted a letter to the Appellate Division on October 6, 1989 in which he requested the appointment of an attorney to assist in perfecting his appeal. Pet. Ex. F. Petitioner's letter to the Appellate Division serves as a time stamp which indicates his awareness of the circumstances and his recognition of an additional step necessary to perfect his appeal.

6

§2244(d)(1)(D). See Hizbullahankhamon v. Walker, 255 F.3d 65, 69 (2d Cir. 2001) (State prisoners whose convictions became final prior to the effective date of AEDPA, April 24, 1996, are allowed one (1) year from AEDPA's effective date to file a §2254 petition); Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998) (same). Petitioner did not file the instant petition until September 25, 2003.

In this case, Petitioner contends that he has presented evidence that he may be actually innocent of the crimes to which he pled guilty. In a letter dated April 26, 2000, Catherine E. Palmer, Esq., then a litigation partner at Latham & Watkins, sent a letter to Mark Monaco, Esq., who apparently was then representing Petitioner with respect to deportation proceedings that had their origin in the instant convictions. After introducing herself as having served as an Assistant United States Attorney in the Eastern District of New York for eleven (11) years, during which she served as Chief of the Criminal Division and Senior Litigation Counsel and specialized in the prosecution of Asian gangs, she explained how she had come to the opinion that Petitioner had not committed the actual homicide:

> Between 1990 and 1992, our Office, together with the FBI, investigated and prosecuted an Asian gang in New York called the Green Dragons. We successfully prosecuted and convicted 15 gang members, on charges ranging from extortion to kidnapping and multiple homicides. We completely dismantled

>   the gang.  In the course of our investigation of the Green
>   Dragons, we reviewed and investgated the circumstances
>   surrounding the homicide underlying Mr. Kim's state
>   conviction.  During this investigation, we learned that Mr.
>   Kim was a young teenager associated with members of the
>   Green Dragons at the time of the homicide in question.  We
>   also learned that several gang members, including the gang
>   leaders, were arrested along with Mr. Kim in connection with
>   the homicide.  We learned from a cooperating witness in our
>   federal case that Mr. Kim did not commit the homicide, that
>   it was committed by some of the gang leaders and older
>   members of the gang.  We also learned that Mr. Kim was
>   directed by the gang leaders to accept responsibility for
>   the homicide because he was a juvenile and would be dealt
>   with less harshly than the older members and gang leaders.
>   We relied upon this evidence in the federal investigation
>   and prosecution of the Green Dragons.  We also conveyed this
>   information to Mr. Kim's parole authorities.  We firmly
>   believe that Mr. Kim did not commit the homicide.

Pet. Ex. L.

In cases involving untimely claims by a federal habeas petitioner, the Court of Appeals has instructed District Courts to evaluate the merits of a claim of actual innocence prior to determining whether such a claim satisfies the requirements for equitable tolling or otherwise excuses the late filing. Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004); Whitley v. Senkowski, 317 F.3dc 223, 225 (2d Cir. 2003). To establish actual innocence so as to excuse an untimely filing, "[t]he petitioner must support his claim 'with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.' [and] 'show that it is more likely than not that no reasonable

8

juror would have [convicted him in light of the new evidence.]' *Schlup [v. Delo]*, 513 U.S. [298,] 324, [327,] 115 S.Ct. 851[, 865, 867, (1995)]. Doe, supra. Palmer's letter does not satisfy this requirement. Her opinion is not based on personal knowledge. She has not identified who the witnesses are who might be able to substantiate her conclusion nor whether they are available, and Petitioner has not advised us of his efforts in gathering this evidence, if it exists. Most significantly, the fact that Petitioner may not have been the proverbial trigger man in the events, does not negate his having pled guilty to kidnapping nor otherwise establish that he was not an accessory or aider and abettor. The transcript of the guilty plea discloses that the theory of liability was aiding and abetting. In the allocution, although Petitioner admitted having been present and having participated, he stated, "I did not pull the trigger." Pet. Exh. D (tr. 9/8/1988 at 27). As a result, Palmer's opinion is hardly newly discovered. Having determined that Petitioner has not presented a claim of actual innocence, the Court need not consider whether such a claim satisfies the requirements for equitable tolling or otherwise excuses the late filing.

Based on the foregoing, I respectfully recommend that your Honor dismiss this Petition because Petitioner is a fugitive not entitled to have his claim reviewed and because his claim is

9

barred by the statute of limitations.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days, plus an additional three (3) days pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (see Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains, New York 10601 and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, Room 434, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge Robinson. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge

Robinson and should <u>not</u> be made to the undersigned.

Dated: July 12, 2007
White Plains, New York

                                            Respectfully submitted,

                                            Hon. Mark D. Fox
                                            UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

Hon. Stephen C. Robinson

Daniel M. Perez, Esq.
Ronald L. Kuby, Esq.
Kuby & Perez LLP
740 Broadway at Astor Place, 5th floor
New York, N.Y. 10003

Joseph M. Latino, Esq.
Assistant District Attorney
County Courthouse
111 Dr. Martin Luther King Jr. Blvd.
White Plains, N.Y. 10601